UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
FRANK W. WHITE, JR.,                              :
        Plaintiff,                                    :
                                                  :
v.                                                :
                                                  :
THE COUNTY OF DUCTHESS, CITY OF                   :
POUGHKEEPSIE, OFFICER SEAN                        :     **OPINION AND ORDER**
MCCARTHY, OFFICER BRYAN CRONK,                    :
OFFICER VAN WAGNER, OFFICER                       :     15 CV 8744 (VB)
ROBERT HABERSKI, OFFICER MATTHEWS                 :
HAMEL, OFFICER LAWRENCE                           :
BARTOLOTTI, Individually, and as Employees        :
of the City of Poughkeepsie Police Department,    :
STEVE ROSENBLUM, Individually, and his            :
Official Capacity as Parole Revocation            :
Specialist,                                       :
        Defendants.                                  :
--------------------------------------------------------------x

Briccetti, J.:

    Plaintiff Frank W. White, Jr., brings this action pursuant to 42 U.S.C. § 1983 against defendants the County of Dutchess (the "County"), theCity of Poughkeepsie (the "City"), parole revocation specialist Steve Rosenblum, and police officers Sean McCarthy, Bryan Cronk, Van Wagner, Robert Haberski, Matthews Hamel, and Lawrence Bartolotti[1] asserting claims for false arrest, malicious prosecution, unreasonable search and seizure, falsification of evidence, conspiracy, and defamation.

    Before the Court are defendants' two motions to dismiss the amended complaint under Rule 12(b)(6).

---

[1] Some counts in the complaint also mention Officer Thomas Matthews as a defendant. But Matthews is not listed as a defendant in the caption or under "Parties" in the amended complaint, has not been served, and has not appeared. Accordingly, he is not a defendant.

For the following reasons, defendant Rosenblum's motion (Doc. #24) is GRANTED, and the other defendants' motion (Doc. #26) is GRANTED in part and DENIED in part.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

In deciding the pending motion, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor.

This case arises from plaintiff's arrest on August 23, 2014, for criminal possession of a weapon and criminal possession of a controlled substance. Plaintiff claims the arrest was baseless and the product of fabricated evidence, and his subsequent prosecution was in bad faith.

Prior to this arrest, plaintiff was working at Taco Bell and enrolled at a culinary institute. Plaintiff was on post-release supervision for a previous criminal conviction at the time of this arrest on August 23, 2014.

Sometime in August 2014, prior to the arrest, Officer Haberski allegedly told the Poughkeepsie Police Department ("PPD") that plaintiff was known to operate a white Toyota Corolla bearing a New York license plate GMA4056, was dealing heroin, and was in possession of a black semi-automatic handgun. Based on this information, according to plaintiff, the police department defendants decided to arrest him without a warrant. Plaintiff alleges the PPD never verified this information.

Plaintiff claims he does not own or operate a car. On August 23, 2014, plaintiff's uncle, Jack Lee Goodman, gave plaintiff a ride to work in Goodman's white Toyota Corolla. Plaintiff sat in the front passenger's seat.

As plaintiff was riding in Goodman's car, several police cars—an unmarked white SUV, an unmarked gold Pontiac, and a marked police car—pulled over the white Corolla.

According to the amended complaint, Officers McCarthy and Cronk exited the gold Pontiac and approached the Corolla. One of the officers asked Goodman to step out of the vehicle. When McCarthy asked for Goodman's consent to search the car, Goodman refused. Cronk approached the passenger side, asked plaintiff's name, and returned to the Pontiac. A few seconds later, Cronk returned to the passenger side of the Corolla and asked plaintiff to step out of the vehicle. When plaintiff asked why he was being asked to step out, Cronk drew his weapon and ordered plaintiff out of the vehicle. Cronk handcuffed plaintiff and put him in the back of the marked police car. Cronk took the keys out of the ignition of the Corolla and opened its trunk, from which Cronk recovered a gun from inside a red bag, which was inside a black bag.

Officers Hamel and Van Wagner arrived at the scene as back-up prior to plaintiff's arrest, and later drove plaintiff to the police station in the marked police car. When they arrived at the station, Hamel and Van Wagner searched plaintiff and placed him in a cell.

At the police station, Officer Bartolotti read plaintiff his Miranda rights, interrogated plaintiff regarding the incident, and "booked and officially put [p]laintiff under arrest." (Am. Compl. ¶ 29). Defendants had not obtained a warrant for plaintiff's arrest.

Officer McCarthy completed an arrest report, which is inconsistent with plaintiff's account of the arrest in several respects. In the report, Officer Cronk stated he a saw a fairly large bulge in plaintiff's pocket, which he believed could be a gun. The report notes the officers observed a number of white "crumbs" of unknown substance on the passenger side floor boards. Plaintiff alleges Cronk used these crumbs as a pretext to find he had "probable cause to search the car." (Am. Compl. ¶ 55). The report notes the white crumbs were later found to be broken up pieces of Styrofoam. The report further states Officer Cronk recovered cocaine and/or heroin from plaintiff's person after plaintiff consented to be searched.

3

In contrast with the police report, plaintiff claims he was never searched at the scene. Plaintiff also claims the officers did not have probable cause to search the vehicle and Officers Cronk and McCarthy fabricated a "reason to search [p]laintiff and the vehicle." (Am. Compl. ¶ 53). Plaintiff maintains he did not possess a gun at the time he was arrested, and that the gun recovered from the Corolla was never in his possession because it was inside two bags in the trunk. Moreover, plaintiff claims no drugs were recovered during the arrest, as evidenced by the police's failure to produce any photographs of the drugs they claim to have recovered.

On August 24, 2014, plaintiff was arraigned on the felony charges of criminal possession of a weapon in the second degree, criminal possession of a controlled substance in the third degree, and criminal possession of a weapon in either the third or fourth degree.[2]

On August 25, 2014, the Poughkeepsie Journal published an article about plaintiff's arrest, which included plaintiff's picture and statements from the police department indicating plaintiff was arrested for possession of heroin and a gun.

Plaintiff was never indicted. On October 7, 2014, plaintiff was released on his own recognizance with the recommendation that plaintiff not leave the state of New York and that he be present for future proceedings in the matter. Plaintiff alleges he was released because the state did not want to conduct the preliminary hearing that had been scheduled for October 7. However, plaintiff remained in custody for violating parole.

On March 17, 2015, plaintiff's felony charges were reduced to misdemeanor charges, specifically criminal possession of a weapon in the fourth degree and criminal possession of a controlled substance in the seventh degree. Plaintiff was arraigned and was offered the chance to

---

[2] The complaint describes this charge as criminal possession of a weapon in the fourth degree, but cites the New York Penal Law statute for criminal possession of a weapon in the third degree. Criminal possession of a weapon in the fourth degree is not a felony.

plead guilty to the criminal possession of a controlled substance in the seventh degree in full satisfaction of the charges and be sentenced to time served.  Plaintiff insisted on going to trial.

On April 14, 2015, plaintiff moved to dismiss all charges for lack of probable cause.  On April 29, 2015, the court dismissed the matter in the interest of justice at the request of the Dutchess County District Attorney's office.  However, plaintiff remained in custody because of a parole hold.

On May 7, 2015, an Administrative Law Judge ("ALJ") held a parole hearing to determine whether to continue parole revocation proceedings against plaintiff.  According to the amended complaint, at the hearing, defendant Rosenblum, a parole revocation specialist, told the ALJ that the Assistant District Attorney had informed Rosenblum the search was bad and the District Attorney's office lacked evidence to prove plaintiff's guilt.

Plaintiff also alleges Rosenblum "acted in bad faith in providing information that led to a warrant to revoke Plaintiff's parole."  (Am. Compl. ¶ 115).  It is unclear when plaintiff alleges Rosenblum did this, to whom he provided information, and what the information was.

On May 21, 2015, plaintiff was released from jail because the parole office decided there was a lack of evidence to prove plaintiff's guilt in the criminal matter for which he had been arrested.  Plaintiff alleges Rosenblum thereafter imposed new conditions and modifications to plaintiff's parole, specifically, a reduced curfew, mandated weekly parole visits, and required completion of a drug program that plaintiff had already completed.

Plaintiff claims both this arrest and the article in the Poughkeepsie Journal have negatively affected his life, including resulting in the loss of his job and financial aid from culinary school, and making it difficult for him to find other employment, financial aid, or professional training.

After defendants moved to dismiss the initial complaint, the Court sua sponte granted plaintiff leave to file an amended complaint. (Doc. #18). The amended complaint contains the following Section 1983 claims:

- Count One: false arrest against the City, the County, and Officers Cronk, McCarthy, Van Wagner, Hamel, Haberski, and Bartolotti.

- Count Two: malicious prosecution against the City, the County, Rosenblum, and Officers Cronk, McCarthy, Van Wagner, Hamel, Haberski, and Bartolotti.

- Count Three: unreasonable search and seizure against the City, the County, and Officers Cronk, McCarthy, Van Wagner, Hamel, and Bartolotti.

- Count Five: falsification of evidence against Officers McCarthy, Cronk, Van Wagner, Haberski, Hamel, and Bartolotti.

- Count Six: conspiracy against Rosenblum and Officers Cronk, McCarthy, Van Wagner, Hamel, Haberski, and Bartolotti.

- Count Seven: defamation against the County and the City.[3]

Rosenblum thereafter moved to dismiss all claims against him. (Doc. #24). Separately, the City, the County, and Officers Van Wagner, Hamel, Haberski, and Bartolotti moved to dismiss all claims, and Officers Cronk and McCarthy moved to dismiss the conspiracy claim. (Doc. #26).

---

[3] Plaintiff also brings a claim (Count Four) for municipal liability against the City and the County pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978). But a Monell claim is not a separate constitutional violation. Rather, it is a vehicle for suing a municipality for its employees' constitutional violations. Accordingly, the Court treats all claims against the City and County as Monell claims, and construes Count Four as bringing Monell claims against both the City and the County for false arrest, malicious prosecution, and unreasonable search and seizure, even though Counts One, Two, and Three do not list the County as a defendant.

**DISCUSSION**

I.   Legal Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678.  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Id. at 678.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

II.   Defendant Rosenblum

Plaintiff argues Rosenblum is liable for malicious prosecution because he (i) presented information at the parole revocation hearing; (ii) provided information that led to a warrant to revoke plaintiff's parole; and (iii) imposed new, harsher special conditions on plaintiff's parole.[4]

The Court disagrees.

First, Rosenblum is entitled to absolute immunity insofar as plaintiff's claim is based on Rosenblum's presentation of information to the ALJ at the parole revocation hearing.

---

[4]   The Court addresses the conspiracy claims (Count Six) against all defendants in Part V.

State officials are immune from suit for acts that are judicial or prosecutorial in nature. Scotto v. Almenas, 143 F.3d 105, 110 (2d Cir. 1998). Thus, parole officers and parole revocation specialists are entitled to absolute immunity when they initiate parole revocation proceedings and present the case to revocation hearing officers. Id. at 112. Therefore, Rosenblum is entitled to absolute immunity for his prosecutorial actions here.

Second, plaintiff fails to allege plausibly that Rosenblum "provid[ed] information that led to a warrant to revoke Plaintiff's parole." (Am. Compl. ¶ 115). The amended complaint does not specify what information Rosenblum provided, when he provided it, to whom, or how it led to the issuance of a warrant. Indeed, according to the amended complaint, plaintiff's parole revocation hearing was triggered by his arrest on August 23, 2014, not by any information Rosenblum provided to obtain a parole warrant.[5]

Finally, modifying the conditions of plaintiff's parole cannot support a claim for malicious prosecution because it did not constitute a criminal proceeding. Indeed, "[a] parolee has no constitutionally protected interest in being free of a special condition of parole." Boddie v. Chung, 2011 WL 1697965, at *1 (E.D.N.Y. May 4, 2011). Modifications of parole conditions are thus actionable under Section 1983 as due process violations only if "the [parole] board or its agents acted in an arbitrary or capricious manner." Id. at *2 (quoting Robinson v. Pagan, 2006 WL 3626930, at *1 n.2 (S.D.N.Y. Dec. 12, 2006)).

---

5   In any event, even if plaintiff did allege plausibly that Rosenblum somehow caused plaintiff's parole revocation hearing to occur, perhaps by alerting the parole board to plaintiff's arrest, this would not constitute malicious prosecution. A claim for malicious prosecution requires, among other things, that a criminal proceeding against plaintiff be brought without probable cause. Murphy v. Lynn, 118 F.3d 938, 944 (2d Cir. 1997). Plaintiff had already been arrested when the parole revocation hearing occurred. The arrest alone constituted probable cause that plaintiff had violated the conditions of his parole. See, e.g., People on Petition of Johnson ex rel. Slater v. Denna, 40 Misc. 2d 717, 719 (Sup. Ct. N.Y. Cty. 1963).

To the extent plaintiff seeks to bring a due process claim against Rosenblum, he has not alleged plausibly that Rosenblum modified the conditions of his parole at all, let alone arbitrarily or in a capricious manner.

Under New York law, parole officers and parole revocation specialists have different responsibilities. A parole officer is "an employee of the division whose duties may include but are not limited to the supervision of persons on parole or conditional release, performance of nonclerical duties in institutions, and the representation of the Division of Parole at preliminary and final revocation hearings." 9 N.Y.C.R.R. § 8000.2(j). By contrast, a parole revocation specialist is a type of adversary officer "who may represent the Division of Parole at [a] preliminary or [] final revocation hearing." Id. § 8000.2(i). Although parole officers and parole revocation specialists can both be adversary officers, only parole officers can perform the additional duties listed generally in 9 N.Y.C.R.R. § 8000.2(j). Among the duties of a parole officer, but not a parole revocation specialist, is the imposition and alteration of parole conditions. See N.Y. Exec. L. § 259-c(2); 9 N.Y.C.R.R. § 8003.1.

As alleged in the complaint, and confirmed in defendant's motion, Rosenblum is a parole revocation specialist, not plaintiff's parole officer. Therefore, it is implausible that Rosenblum is the person who altered the conditions of plaintiff's parole.

Accordingly, the malicious prosecution claim against Rosenblum (Count Three) is dismissed.

III.   Defendants City of Poughkeepsie and County of Dutchess

Plaintiff brings claims for false arrest, malicious prosecution, unreasonable search and seizure, and defamation against the City and the County.

All of these claims fail.

Government entities are not held liable for the conduct of their employees through the doctrine of respondeat superior. Monell v. Dep't of Soc. Servs., 436 U.S. at 691 (holding a municipal defendant cannot be held liable under § 1983 on a respondeat superior theory).

To assert a Section 1983 claim against the City, plaintiff must show the existence of an official policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right. Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012).

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following: (i) "a formal policy officially endorsed by the municipality"; (ii) "actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question"; (iii) "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware"; or (iv) "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." Brandon v. City of New York, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010).

With respect to the "custom or usage" theory of liability, an act performed pursuant to a custom that has not been formally approved by an appropriate decision maker may fairly subject a municipality to liability if the relevant practice is "so widespread as to have the force of law." Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 404 (1997). The practice must also be permanent and well-settled. City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988). "Therefore, a plaintiff may establish municipal liability by demonstrating that a policy maker indirectly caused the misconduct of a subordinate municipal employee by acquiescing in a

longstanding practice or custom which may fairly be said to represent official policy." Kucharczyk v. Westchester Cty., 95 F. Supp. 3d 529, 539 (S.D.N.Y. 2015) (internal quotation omitted).

      A.      <u>False Arrest, Malicious Prosecution, and Unreasonable Search and Seizure</u>

Plaintiff has not identified a formal policy officially endorsed by the City. Nor has plaintiff identified actions taken by government officials responsible for establishing municipal polices, or a failure by policymakers to provide adequate training or supervision. Therefore, the first, second, and fourth theories of <u>Monell</u> liability do not apply to these claims.

Plaintiff alleges the City of Poughkeepsie Police Officers were "on patrol paid by the state Gun Involved Violence Elimination Program" when they pulled over plaintiff and Mr. Goodman. (Am. Compl. ¶ 25). Plaintiff further alleges "the City of Poughkeepsie had implemented a policy and custom to recover suspected illegal handguns without a warrant" (<u>Id</u>. ¶ 152), "the City of Poughkeepsie encouraged the police officers to make the unlawful search and seizure, false arrest, and malicious prosecution by implementing the program" (<u>Id</u>. ¶ 154), and "the City of Poughkeepsie paid police officers throughout [sic] the fund to recover guns." (<u>Id</u>. ¶ 158). Plaintiff claims thirty-one guns were recovered through the Gun Involved Violence Elimination program, a "substantial number" of which were recovered without a warrant. (<u>Id</u>. ¶ 156). Plaintiff alleges that, as was reported in the Poughkeepsie Journal article about his arrest, the County of Dutchess received $342,512 from the program, and that "Plaintiff's stop was paid by" this program. (<u>Id</u>. ¶ 32).

Therefore, it appears plaintiff's theory of liability is that the City and County have a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware.

However, plaintiff has failed to state any facts plausibly alleging this theory of liability. Plaintiff's vague allegation that an unspecified "substantial number" of the thirty-one guns recovered through the program were recovered without a warrant is insufficient plausibly to support an inference of a common, prevalent, widespread, and well-settled custom. Plaintiff has not alleged plausibly that thirty-one guns were recovered illegally, or even that any of the "substantial number" of guns recovered without a warrant were recovered illegally. Moreover, even if some of the "substantial number" of guns recovered were done so in violation of constitutional rights, plaintiff has not alleged enough incidents alleged to rise to that level. See, e.g., Tieman v. City of Newburgh, 2015 WL 1379652, at *17 (S.D.N.Y. Mar. 26, 2015) (holding allegations of thirteen instances of excessive force during arrests over four years did not plausibly demonstrate the use of excessive force was so frequent and pervasive to constitute a widespread custom).

Therefore, the false arrest (Count One), malicious prosecution (Count Two), and unreasonable search and seizure claims (Count Three) against the City and County are dismissed.

B.   Defamation

Plaintiff also argues the City and County violated plaintiff's Fourteenth Amendment due process rights by defaming plaintiff and thereby depriving plaintiff of his constitutionally protected liberties without due process when they provided information concerning plaintiff's arrest to the Poughkeepsie Journal.

This claim fails. Plaintiff identifies no policy or custom pursuant to which either the City or County provided allegedly defamatory information to the Poughkeepsie Journal in violation of his due process rights. Therefore, plaintiff has articulated no theory under Monell to hold either

municipality liable for the actions of the unnamed person who allegedly gave this information to the Poughkeepsie Journal.

Accordingly, the defamation claim (Count Seven) is dismissed.

IV. Officer Defendants

Plaintiff brings claims against Officers Cronk, McCarthy, Van Wagner, Hamel, Bartolotti, and Haberski for false arrest, malicious prosecution, and falsification of evidence, and a claim against Cronk, McCarthy, Van Wagner, Hamel, and Bartolotti for unreasonable search and seizure. Defendants argue plaintiff has failed to state a claim with respect to Officers Van Wagner, Hamel, Bartolotti, and Haberski.

The Court agrees, except with respect to the false arrest claim against Van Wagner, Hamel, and Bartolotti, and the unreasonable search claim against Van Wagner and Hamel.

As an initial matter, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013) (internal quotation omitted). The Court thus evaluates the involvement of each defendant in each alleged constitutional deprivation.

A. False Arrest Claim

Section 1983 claims for false arrest are analyzed under the law of the state where the arrest occurred. Jaegly v. Couch, 439 F.3d 149, 152-53 (2d Cir. 2006). To state a claim under New York law, and thus under Section 1983, a plaintiff must show that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged." Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (internal quotation omitted). An arrest is "privileged" if it is based on probable cause. Rodriguez v. Vill. of

Ossining, 918 F. Supp. 2d 230, 240 (S.D.N.Y. 2013). However, when an arrest is made without a judicial warrant, the existence of probable cause is an affirmative defense, for which defendants bear the burden of proof. Dickerson v. Chertoff, 604 F.3d 732, 751 (2d Cir. 2010).

1. Haberski

Plaintiff's false arrest claim against Officer Haberski fails. The only allegation against Haberski is that he provided information to the police department prompting other defendants to arrest plaintiff. There is no allegation Haberski himself ever confined or intended to confine plaintiff. Therefore, he was not personally involved.

2. Van Wagner, Hamel, and Bartolotti

Plaintiff alleges Van Wagner and Hamel drove plaintiff to the police station and placed him in a cell, while Bartolotti booked and officially put plaintiff under arrest, read him his Miranda rights, and interrogated him about the incident. Based on these allegations, all three defendants intended to confine plaintiff, and plaintiff was conscious of the confinement but did not consent. Thus, the first three elements are met. Because probable cause is an affirmative defense when a plaintiff is arrested without a warrant, here, plaintiff's warrantless arrest is sufficient to meet the fourth element at the motion to dismiss stage.[6]

Accordingly, the false arrest claim (Count One) is dismissed as to Haberski, but not as to Hamel, Van Wagner, or Bartolotti.

---

[6] For this reason, defendants' argument—that these officers were entitled under the "collective knowledge" doctrine to rely on Officers Cronk and McCarthy's allegedly false determination of probable cause—fails on a motion to dismiss. Under the collective knowledge doctrine, "the arresting officer must have acted reasonably in relying on the information communicated to him." Colon v. City of New York, 2014 WL 1338730, at *5 (E.D.N.Y. Apr. 2, 2014). It is not apparent on the face of the amended complaint that defendants Van Wagner, Hamel, or Bartolotti acted reasonably in relying on the information from Cronk and McCarthy. Therefore, at this early stage, these defendants have not met their burden to show probable cause.

B.   Malicious Prosecution and Falsification of Evidence Claims

Plaintiff has not alleged facts sufficient to demonstrate defendants Van Wagner, Hamel, Bartolotti, or Haberski were personally involved in malicious prosecution or falsification of evidence with respect to plaintiff.  Officer Haberski is alleged only to have provided information to the police department about plaintiff.  Officer Van Wagner and Hamel are alleged only to have driven plaintiff to the police station, searched him, and placed him a cell, and Officer Bartolotti is alleged only to have interrogated plaintiff about the incident, read plaintiff his Miranda rights, and officially placed plaintiff under arrest.  These allegations do not plausibly allege defendants' personal involvement in any claims for malicious prosecution, which requires, among other things, that a defendant commence a criminal proceeding against a plaintiff.[7]  Bernard v. United States, 25 F.3d 98, 104 (2d Cir. 1994).  Nor do any of these defendants' alleged actions constitute falsification of evidence—the only officers alleged to have falsified evidence are Cronk and McCarthy.

Accordingly, all claims for malicious prosecution (Count Two) and falsification of evidence (Count Five) against defendants Van Wagner, Hamel, Bartolotti, and Haberski are dismissed.

C.   Unreasonable Search and Seizure

Plaintiff alleges he was subject to an unreasonable search when Cronk and McCarthy searched the Corolla, and when Van Wagner and Hamel searched him at the police station, and an unreasonable seizure when he and Goodman were pulled over in Goodman's Corolla.

---

[7]   Plaintiff's stray allegation that "Van Wagner, Hamel, Bartolotti, [and] Haberski[] provided affidavits, reports, [and] information that supported Plaintiff's malicious prosecution" (Am. Compl. ¶ 113), without details or context, is too vague to support a claim.

15

The unreasonable seizure claim fails for lack of personal involvement. Although plaintiff alleges Van Wagner and Hamel arrived as back-up before the arrest, and subsequently drove him to the police station in the marked police car, plaintiff does not allege either defendant was involved in pulling over the Corolla. Plaintiff does not allege Bartolotti was at the scene of the traffic stop at all.

The unreasonable search claim fails as to Bartolotti because plaintiff does not allege Bartolotti searched him or the Corolla.

Plaintiff does not allege Van Wagner or Hamel were involved in searching the Corolla. However, plaintiff does allege Hamel and Van Wagner searched him at the police station.

Unreasonable searches are actionable under Section 1983 if done without probable cause. Day v. Morgenthau, 909 F.2d 75, 77 (2d Cir. 1990). Although it appears this search was done incident to the arrest, an arrest "must be 'lawful' in order to justify any search incident to that arrest." Roundtree v. City of New York, 778 F. Supp. 614, 620 (E.D.N.Y. 1991). If, as plaintiff alleges, there was no probable cause to arrest plaintiff, then there was also no probable cause to search him incident to that arrest.

Accordingly, the unreasonable search claim is dismissed as to Bartolotti but not Hamel and Van Wagner, and the unreasonable seizure claim is dismissed as to Hamel, Van Wagner, and Bartolotti. (Count Three).

V.    Conspiracy Claim

Finally, plaintiff brings a conspiracy claim against all the individual defendants.

To survive a motion to dismiss on a Section 1983 conspiracy claim, plaintiff must allege: (i) "an agreement between two or more state actors or between a state actor and a private entity;" (ii) "to act in concert to inflict an unconstitutional injury;" and (iii) "an overt act done in

16

furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). Although "[a] plaintiff is not required to list the place and date of defendants['] meetings and the summary of their conversations when he pleads conspiracy, [] the pleadings must present facts tending to show agreement and concerted action. See, e.g., Concepcion v. City of New York, 2008 WL 2020363, at *3 (S.D.N.Y. May 7, 2008) (internal quotation omitted). "[C]onclusory allegations of a § 1983 conspiracy are insufficient." Pangburn v. Culbertson, 200 F.3d at 72 (internal quotation omitted).

As an initial matter, there can be no conspiracy between any of the officer defendants because they are all employed by the City of Poughkeepsie. Hartline v. Gallo, 546 F.3d 95, 99 n.3 (2d Cir. 2008) ("[U]nder the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate entity are legally incapable of conspiring together.") (internal quotation omitted).

Plaintiff has not alleged any facts tending to show agreement and concerted action between Rosenblum and any of the officer defendants. There are no allegations Rosenblum was involved with plaintiff's arrest or the commencement of his prosecution, and no allegations any officer was involved with Rosenblum's actions relating to parole revocation. Thus, the allegation that the officer defendants and Rosenblum "acted together to deprive plaintiff of his Fourth Amendment constitutional rights" (Am. Compl. ¶ 202) is conclusory and not entitled to the assumption of truth. See Ashcroft v. Iqbal, 556 U.S. at 679. Nor does it matter that Rosenblum allegedly knew facts suggesting the search was without probable cause and the drug evidence was fabricated. Mere knowledge of wrongdoing after the fact does not constitute acting in concert with the wrongdoer.

Accordingly, the conspiracy claim (Count Six) against all the individual defendants is dismissed.

VI.     Qualified Immunity

Based on the foregoing, the Court finds plaintiff has stated claims for false arrest and unreasonable search against Officers Hamel and Van Wagner, and false arrest against Bartolotti. Defendants nonetheless contend they are entitled to qualified immunity, and thus the claims against them must be dismissed.[8]

The Court disagrees.

Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).  A qualified immunity defense is established where "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998).

If plaintiff's allegations are true, defendants subjected him to false arrest and an unlawful search, both of which were clearly established to be unconstitutional at the time of plaintiff's arrest on August 23, 2014.  Moreover, without a fuller record, the Court cannot determine whether defendants were objectively reasonable in believing their actions were lawful.  For example, at this stage, the Court cannot determine whether it was reasonable for Officers Hamel,

---

[8]     Because defendants' motion is granted as to all other claims, the Court need not consider the applicability of qualified immunity to those claims.

Van Wagner, and Bartolotti to rely on Cronk and McCarthy's word in deciding there was probable cause to arrest or search plaintiff. Therefore, qualified immunity is denied without prejudice to being reasserted at a later stage of the proceedings.

## CONCLUSION

Defendant Rosenblum's motion to dismiss (Doc. #24) is GRANTED.

The remaining defendants' motion to dismiss (Doc. #26) is DENIED as to the claim for false arrest against Hamel, Van Wagner, and Bartolotti, and the claim for unlawful search against Hamel and Van Wagner. The motion is GRANTED in all other respects.

The remaining claims are false arrest against Cronk, McCarthy, Hamel, Van Wagner, and Bartolotti; unlawful search against Cronk, McCarthy, Hamel, and Van Wagner; and malicious prosecution, unreasonable seizure, and falsification of evidence against Cronk and McCarthy.

The Clerk is instructed to terminate the motions (Doc. ##24, 26) and terminate defendants Robert Haberski, Steve Rosenblum, the County of Dutchess, and the City of Poughkeepsie.

Dated: August 23, 2016
   White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge